May it please the Court, Lola Kingo appearing on behalf of the petitioner, Mr. Herman Gibson, and I'm joined by my colleagues, Satyana and Satyanarayana. I will do my best to watch the clock and reserve two minutes for rebuttal. Your Honors, the central question before this Court is whether two petty theft convictions under California Penal Code, Section 484, constitute aggravated felonies under the Immigration and Nationality Act. First, sitting on bank in Corona Sanchez, this Court held that the answer to that question is no. A conviction for petty theft in California is not an aggravated felony under the INA, even if a recidivist sentencing enhancement is applied. Indeed, the government does not dispute that under Corona Sanchez, Mr. Gibson is eligible for cancellation of removal. The only reason we're here today is because the Board of Immigration Appeals disregarded this Court's binding precedent and instead applied the Supreme Court's decision in Rodriguez, a case interpreting the Armed Career Criminal Act. So what I want to know is, tell me what is it about the Armed Career Criminal Act, as opposed to the sections they're proceeding under in the immigration context, that, I mean, for federal sentencing purposes, takes this case away from Rodriguez? I mean, how do you distinguish? I think what we would have to do to not be bound by Rodriguez is to say that there are so many differences between the two statutes, and they don't serve the same purposes, that Rodriguez did not effectively overrule Corona Sanchez. That's correct, Judge Wardlaw, and I'll walk through the reasons why Rodriguez and Corona Sanchez are so different. It's precisely because Rodriguez was interpreting the Armed Career Criminal Act, which the Supreme Court noted is a statute that is recidivist in its entire purpose and nature. I mean, to state the obvious, it's a statute that's looking to punish recidivists, whereas the INA, which was interpreted in Corona Sanchez, is not punitive in nature. And so, starting with those two different purposes... I just want to point out that the same definition for aggravated felony applies in immigration as well as for federal sentencing purposes, right? That's correct. Okay, so what we have to say is that those two purposes are so different from the Armed Career Criminal Act. Would you repeat what you said the difference was? Sure, that the Armed Career Criminal Act is a statute that is punitive in nature, in that it is looking to capture recidivists and punish them. Aren't all criminal statutes punitive in nature? Well, the INA is not punitive in nature. Indeed, the INA is not punitive in nature. And if you look at the specific provision that we're applying, we're looking at a criminal law and seeing whether it has an application. All the criminal statutes are punitive, right? Correct. Less relevant. Correct, except the INA is not, the Immigration and Nationality Act is not punitive in nature. And the particular provision that we're looking at here, cancellation of removal, is ameliorative, which means that it's supposed to be read and understood and interpreted. Well, no, it seems to me Congress has said, we don't want other criminals in this country. And we've specified the kind of criminals we don't want. And we look at the criminal law to determine that. And why do you find a benevolent purpose here? Well, because that's what this Court found in Corona Sanchez. So in Corona Sanchez, the Court noted that it's doubtful that Congress intended to capture crimes such as petty theft, which in and of themselves are not aggravated felonies unless we count the recidivist enhancements. And I would propose that in Rodriguez, the Supreme Court didn't left that holding untouched. In other words, what the Rodriguez Court did was it recognized that obviously the underlying Ninth Circuit decision relied heavily on Corona Sanchez. But it almost went to pains not to disturb that holding. And instead, every single reason that's articulated in Rodriguez for its holding is pinned down to the particular language of the Armed Career Criminal Act, as well as its purpose. There are no sweeping declarations in that opinion. But the California criminal law on petty theft is punitive, just the way the career criminal is punitive. Isn't that true? Correct. But I would say here that we're not – that's the relevant question. The relevant question is not the California statute itself, because that only comes into play because we're talking about the Immigration and Nationality Act. So I would say that the two statutes that are worth comparing here are the INA, which this Court has already interpreted in Corona Sanchez, and then the Armed Career Criminal Act, on the other hand, which the Supreme Court interpreted in Rodriguez. I thought Corona Sanchez was a sentencing case, a sentencing enhancement case. It was. That's correct. Okay. So, I mean, the problem is I don't think we can just look at the immigration context and say that's benign and a familiar tip when the case that we're actually looking at that you want us to rely on was in a sentencing enhancement situation, which is – you could arguably say that that situation is more akin to the Armed Career Criminal Act. I think the distinction you want to be making, though, is that the Armed Career Criminal Act is a recidivist statute, not a punitive statute. I mean, they're all punitive – specifically recidivist. But isn't Corona Sanchez also the sentencing enhancement at issue there? Wasn't that also based on a recidivist principle? Because it enhances your sentence – your offense level 16 levels for a petty theft with priors. That's correct, Judge Wardlaw, except the relevant provision is the aggravated felony provision. And as the Supreme Court noted, I believe it's in Covertree-Rosendo, the only place that term aggravated felony is used is in the INA. And so that's the reason why I think there still is something to be said about the fact that if the Supreme Court, you know, obviously has said that recidivist enhancements are counted for purposes of the Armed Career Criminal Act, there's still a way to distinguish that holding from what an aggravated felony means, as that term is defined within the Immigration and Nationality Act, because that's the only place the term can be found. Well, I'm really grasping at a way not to have a three-judge panel decide that an en banc decision of our court should be overruled. So you've got to give me a little more than what you've said so far in terms of distinguishing that. Okay. Well, I think the other important thing to note here is that, you know, as is relevant to Mr. Gibson's case, and again as is relevant to the INA and Corona Sanchez, the holding that it's doubtful that Congress intended to include recidivist enhancements within the definition of aggravated felony is pinned in the fact that in the INA, Congress was able to specify where multiple offenses or recidivist enhancements should be counted. And so the fact that on the one hand here when we're looking at the aggravated felony provision, Congress has not specifically said multiple convictions, whereas in other provisions of the INA, Congress has said multiple convictions, I think that again stands as a distinction with a difference. Mr. Gibson. Aren't we dealing with a definition that says for which the term of imprisonment is at least one year? Isn't that true for either case, for an immigration case or a sentencing case? I'm sorry. I don't think I understand the question. Could you repeat it? The definition is a term of imprisonment is at least one year. That's correct. Is that any different for INA purposes, the language of the statute? Oh, I see. Correct. It's not any different. And didn't Justice Alito say that the holding in Rodriguez was based on interpretation of the plain terms of the statutory text? That's correct. So you have, he said, I mean, he went in to discuss other issues, but he began with the premise that the decision was based on the plain terms of the statutory text. And if the statutory text is no different for INA purposes as it is for sentencing purposes, then isn't that the end of it? Well, I would submit, though, in the context of the Armed Career Criminal Act, the language is entirely different because there they're looking for a maximum term of imprisonment, which in essence you're looking for a theoretical max. And again, thinking about the purpose of the Armed Career Criminal Act, that it's recidivist, that in and of itself sort of contemplates the idea of counting anything that you can to reach a theoretical maximum. But the word maximum does not appear anywhere in the language for which a term of imprisonment is at least one year. And so because I think, you know, the underlying premise of the language is different, I would disagree with to begin with. Please. All right, you're over your time, but I'll give you a minute to look at that all. Thank you. Thank you. May it please the Court, Timothy Hayes on behalf of the Attorney General. Under the Immigration and Nationality Act, an aggravated felony includes a theft offense for which a term of imprisonment is at least one year. Mr. Gibson has received at least two convictions for petty theft, for stealing personal property, for which he received sentences of 16 months imprisonment on each. Consistent with the Supreme Court's holding in Rodriguez and the plain language of the statutory provision at issue, the Board properly concluded that Mr. Gibson has been convicted of a theft-based aggravated felony and is therefore ineligible for cancellation of removal. The Court should accordingly deny the petition for review. This Court premised its holding in Corona-Sanchez that petty thefts with a sentencing enhancement for prior convictions did not constitute an aggravated felony, an application of the categorical approach. It applied that categorical approach to the phrase for which a term of imprisonment is at least one year. So wait, let's just separate it out. So Corona-Sanchez also held that it doesn't fit within the generic theft offense, but not just based on that, because theft under California law could include other things besides, like it could include services. So it said it was overbought. So for the nature of the crime, we still, Rodriguez didn't touch that. We still have to look and see what this was. And you have documents in Gibson showing what it was. It was two thefts of personal property from two different stores. Absolutely, Your Honor. I believe that part of Corona-Sanchez doesn't apply here. Absolutely. I believe that part of Corona-Sanchez is untouched, except to the extent that Duenas-Alvarez might have overruled the aiding and abetting part. But the service. Aiding and abetting, yeah. Yeah, yeah, yeah. But the services and labor and all that, yeah, that's still intact. And you would still apply the categorical approach to the theft offense definition, just like you would in Taylor for the burglary. Okay. But then we get to the term of imprisonment of one year. Exactly. And Rodriguez, and then the later Supreme Court case of Nijuan v. Holder undercut the methodology that the Court applied to that second, that imprisonment part. Do you think it effectively overruled Corona-Sanchez? If not, seriously called into question. So here's the problem we have. We're a three-judge panel. Corona-Sanchez is an en banc opinion of this Court. And to follow Rodriguez instead of Corona-Sanchez, we have a case that says we have to find that Rodriguez effectively overruled that aspect of Corona-Sanchez. I believe you're referring to Miller v. Gammie. No, I'm referring to a subsequent case. Oh, okay. Sykes-Miller v. Gammie. Okay. And I think it's in my benchmark, but it's Liston. Let me just see. Lindsay, maybe. But what it says in that case, the facts and the law were exactly on point, that the Supreme Court overruled, in another case, an identical fact and legal question, had to do with peremptory challenges. Here we don't have facts and law exactly on point. Is this something that we should do a sponte call en banc, so that the en banc Court could consider it? I believe that if you tie Rodriguez together with the Supreme Court's later case of Nijhuan v. Holder, you have a clear indication that the methodology that was applied to the imprisonment term in Corona-Sanchez has been overruled. Okay. Nijhuan v. Holder. Right, Your Honor. It was a case that dealt with the aggravated felony definition of fraud or deceit 1101-843-M of the Immigration and Nationality Act. The Court held that the phrase, something to the effect of a crime involving fraud or deceit in which the loss to the victim exceeds $10,000, in which the loss to the victim exceeds $10,000, it held that phrase circumstance-specific, meaning that you would look to see what the offender in question received for his or her particular fraud or deceit offense, rather than apply a categorical approach to see if the elements match up to a generic federal definition. That's not exactly on point either, is it? It isn't squarely on point. I understand where you're getting at, Your Honor. In my mind, the methodology has been undercut, and that's sufficient for a three-judge panel to... The rationale. Right. You're arguing the rationale. Right, I'm arguing the rationale. Right. Okay, so Nijjuan asks, not what the maximum term of imprisonment a generic offender could receive for a theft offense, but what the particular offender in question received for his theft offense. This Court, in a very recent case, United States v. Doss, applied this kind of hybrid methodology to a criminal statute, where it pulled apart a criminal statute that enhanced the recidivism if the minor involved the victim. That was a circumstance-specific approach, not a generic element-by-element categorical comparison. Unless the panel has any other questions for me? Thank you, Your Honors. Thank you. Your Honors, I have two points I'd like to make on rebuttal. The first is that in order for Rodriguez to have overruled Corona-Sanchez, which is obviously an en banc opinion, those cases have to be clearly irreconcilable. And I don't think we have that here where... We get the standard of clearly irreconcilable. From Miller v. Gammy. And so because there's enough to distinguish these two cases, and because the Supreme Court literally mentions Corona-Sanchez once in passing, and then ties the rest of its holding to the particular language that it was analyzing, and the purpose of the Armed Career Criminal Act, there isn't enough to say that these cases are clearly irreconcilable, which is the standard that has to be met. I mean, we can speculate all we want about what the Supreme Court would do, but I would submit that that's not sufficient to then hold that Corona-Sanchez is no longer a good law. I think at absolute worst, this is a case that possibly could go en banc if we think that Corona-Sanchez was wrongly decided. But I think Corona-Sanchez applies here. And based on that, Mr. Gibson is statutorily eligible for cancellation of removal. Thank you very much. Ms. Kingo, thank you for you and your firm, Latham & Watkins, taking on this case. It's a pro bono project. We really appreciate it. And thank you, counsel, for a good argument. And this case will be submitted. You may proceed, counsel. You may proceed. Good morning, Your Honor. Mark Carlos on behalf of the appellant Mario Rivera. May it please the Court in opposing counsel. Your Honor, I'd like to reserve three minutes for rebuttal. Watch your clock. Thank you. Well, as the Court has heard two previous cases, this particular case centers directly on the Corona-Sanchez matter. It involves exactly the same fact pattern. And the distinction here is that the government is contending that Rodriguez essentially guts Corona-Sanchez, which we believe that it doesn't. We believe that Corona-Sanchez attacked this issue on two levels. One is the recidivism issue, and the other one being the overgraph issue or the categorical or modified categorical approach. Yeah, on that issue, are there sufficient documents of conviction in the record in this case? It seems to me that the district court just relied on the PSR. I don't know if that's sufficient. That's correct, Your Honor. And, in fact, we're indicating that that might not be enough. His bond was presented at the sentencing hearing with the PSI, and that's what was present at this particular instance. The government filed a motion to, in effect, supplement the record asking us to take judicial notice of certain other documents? Correct, Your Honor. Those are just, I think, the plea. It's just a plea form, basic state court plea form, which indicated that he was convicted of Penal Code Section 484, theft of property from Walmart, and that's it. And I guess that's where we get back to the analysis that this court did in Corona-Sanchez about the Penal Code Section 484. And I don't even want to get into the recidivism part of it, but just the penal code itself, which outlines it's sort of a catch-all theft offense for California. And the critical things that affect this particular case are they actually point out that it hits theft of services and, I think, false reporting of financial status or something of that effect, or credit. And those are items which ---- Do you object to the government's request that we take judicial notice of the documents that they filed? I've reviewed those, and at this point, no, Your Honor. I think that the court should analyze this the way it did in Corona-Sanchez, which is basically, or actually in Taylor, whether or not those are sufficient to find that this is an aggravated felony. Well, until you said that, I was inclined to deny that request for judicial notice because ---- Can I retract that then? Well, because we're not supposed to be taking evidence at this point, and this is evidence that under Corona-Sanchez, which was established precedent in our circuit and is untouched by Rodriguez, would have required the government to introduce before the district courts so that the district court would have that information for purposes of sentencing. I think that's ---- I mean, I personally normally do not accept evidence at this level. At least the court could overrule my actual motion, but ---- Well, Your Honor, it's something I think that maybe I should put this on just a basic day-to-day level. We get, in federal court, we get cases from the state court on a daily basis, and the pleadings that we get from the documents we get from them are just bare bones, and you can't tell anything from them. And I can tell you, before going into private practice, I spent years in the public defender's office here in Los Angeles County and in San Diego County, and I can tell you that the Penal Code Section 44 is a catch-all for just about anything. I mean, it could be you're sitting in a car and they find some items which aren't yours, and that's just a plea agreement. That's a plea bargain that you can make. And what we have coming over to the district courts when we have these sentencings are these just bare-bones plea agreements. Just not this ---- The person sentenced to over a year. Correct. In a prior ---- Well, like I said, I'm not doing ---- I don't even want to talk about the time in this as much as the over-breath of the actual Penal Code Section 44. Okay. So you're saying that Corona Sanchez is good law in that, and now you want to change your position on it? Well, it is good law. It is good law, but the court looked at it on two levels, right? They looked at it as to the 44 statute and also the recidivism issue. Right. And I believe it's still good law regardless of what Rodriguez says. My argument is concentrated on the Penal Code Section 44 and the approach the court took in determining that that was not an aggravated felony. And I think that this Court's analysis of that was right on point. I think that it pointed out essentially everything that was necessary for determination that there was no aggravated felony. And once again, that centered on the fact that the Penal Code Section had ---- when they actually exercised no control over it or, in fact, it was not even properly in that defense. So you're going to actually ---- I'm going to at this point, unless there are further questions, I'll reserve. Okay. Thank you. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honors, United States v. Rodriguez is clearly irreconcilable with Corona Sanchez. And, I mean, but for the fact that Rodriguez wasn't Corona Sanchez itself, it represents the most direct repudiation of Corona Sanchez's holding on recidivism. When one looks to this Court's opinion in Rodriguez, it says we are bound by Corona Sanchez. The last sentence of Footnote 6 says Corona Sanchez is binding precedent and dictates the result here. The case is cited no less than 20 times. For the United States Supreme Court, then, to say that that analysis is no good, but for that being Corona Sanchez itself, I don't think this Court could get a better example of clearly irreconcilable. That's a hard word to pronounce, and I know I'm not doing it right. And it sounds to me like my defense counsel, at least in this case, isn't even trying to defend that aspect of the holding. No, what he's saying is that we have to ---- and the first part of Corona Sanchez's holding, it's not a ---- the conviction is not categorically a petty theft, and that the government didn't introduce sufficient records to demonstrate that we can apply the modified categorical approach to determine that. I would like to address that, Your Honor. Just by way of 10 seconds, I know Your Honor was saying, you know, it's obviously a weighty thing for a panel to hold that an en banc case is no longer good law. We're not asking this panel to say all of Corona Sanchez is bad law, just that recidivism holding. I believe, like my predecessor from immigration who appeared before me, we don't dispute that it's categorically overbroad because it reaches labor as well as property. So turning to that question, I know Your Honor had concerns about the record. It is highly unusual for the government to ask this Court to take judicial notice of records. Right. Shouldn't we ---- isn't the proper procedure for us to remand on that and then you have the district court make that decision? I would say normally, Your Honor, but not ---- it doesn't have to be because it's a very fundamental principle that this Court can affirm on any basis in the record. Right, but you're asking us to take judicial notice of evidence that should have been submitted to the district court. District court relied on PSR. That's error. It is, but I'll say this too. I want to ---- I don't know if this point came through. There's almost an equitable thing here. My defense counsel, not once, not twice, three separate times below, agreed to this being a plus eight. That's a supplemental excerpt to the record. Eight, 22, and 26. Eight was the guilty plea colloquy. Twenty-two was the sentencing memorandum. And 26 was the sentencing summary chart. There's a reason the government didn't introduce this evidence below. It's because of those three concessions. So to that extent, I know it's not the ultimate ---- Did the government have the evidence at that point? No. It had to be ---- it had to be acquired. But, you know, with the 2,000 to 3,000 cases that we do a year, obviously, when we have a defense counsel who is representing ---- I mean, we're not arguing. My colleague who wrote the brief could have argued invited error, could have argued something else. I'm not saying that. And I'm happy that this issue is before this Court. But all I'm saying is, you know, if there ever would be an exception to the rule that normally judicial notice shouldn't be taken on appeal, it's this case. And it's because of that reason. I mean, it's not that there was negligence below. When our defense counsel doesn't disagree, the government has no incentive to get that evidence. But now you have it, and the ---- Who is the district court judge? Dana Sabraw. And when one looks to those documents, there are three separate petty theft with the prior convictions. I would focus just on the most recent one, the May 2006 from Los Angeles County. And those are exhibits J, K, and L. Now, one of the arguments under the modified categorical approach, my defense counsel says, well, these charging documents just charge the overbroad language of the statute. That is not true. I don't disagree. You have them in front of me, so you might tell me what the charge was. The charge all three times was taking the ---- Which way? Was taking the personal property of Walmart. And it's ---- I think that is the important thing. That's judicially narrowing. California Penal Code 484 talks about theft of labor, money, real, or personal property. Personal property is separated out as something different. That's what's alleged in this case. I mean, when one looks, I believe, page 5 of the defendant's reply brief, it says the defendant is necessarily convicted of the generic crime, where the indictment or information charges only the generic crime. Here, we're not disputing that theft of labor takes this statute out of, you know, that's what makes it overbroad. These charging documents says absolutely nothing about theft of labor. And another case that we cited in our motion for judicial notice, it's Ramirez-Villapando, it's a Judge Clifton opinion from last year, has very analogous facts, and I would ask this Court to look at that case carefully. The only difference between that case and this one is that one was dealing with California grand theft, which is under California Penal Code 487. However, like 484, grand theft reaches the theft of labor, money, real, or personal property. The big difference being that it's over $400 in value. In that case, you had a charging document just like the one here, which specifically alleged taking personal property, and you had an abstracted judgment or minute order which said that that's the count to which the defendant pled guilty. I would submit, Your Honor, that's exactly the record that you have here. Exhibit J states that the defendant did steal, take, and carry away the personal property of Walmart, and Exhibit K, which is his plea agreement, at paragraph 13 of that plea, it says, I hereby freely and voluntarily plead guilty to the charges listed on page 1. And page 1 says count 1. And as far as Exhibit L to that motion of judicial notice, it also indicates that the defendant pled guilty to count 1. So there's no talk of labor in this case. These modified documents, if and I hope this panel does take judicial notice of them, provides the requisite assurance. Snellenberger, this Court, said en banc that we need to have a reasonable certainty that the defendant pled to a generic offense. I believe that these documents prove that, Your Honor. And while, of course, it's always within the prerogative of this panel to rename the case, I believe at this point, again, there is precedent for taking judicial notice on appeal. The rules of evidence apply to the courts of appeal. And if this Court can affirm on any basis in the record, even if it's not one specifically relied on by the district court, see no reason not to. And beyond that, Your Honor, I don't know if the Court has any other questions about Rodriguez overruling Corona-Sanchez, but we would ask the panel to do this. And, again, we're not asking you to throw all of Corona-Sanchez out, just that one narrow portion, because we believe it cannot be reconciled with the Supreme Court's subsequent opinion in Rodriguez. I believe I would submit, Your Honor. All right. Thank you, counsel. Your Honor, just a few points in closing. We would urge the Court to keep Corona-Sanchez intact. I think that the documents submitted by the government regarding the convictions for Penal Code Section 44 just say, to wit, Wal-Mart. There are goods and services in Wal-Mart, which, as I indicated in my brief, that could be attributed to a petty theft, the use of extended warranties. The felony complaint accused him of, I'm sorry.  Unlawfully and in violation of Penal Code Section 484A, steal, take and carry away the personal property of Wal-Mart. Which is basically the statute, Your Honor. It doesn't tell you what he took. It should say, to wit, at least something. I mean, how did it say? Toothpaste or? To wit, a pair of jeans. To wit, whatever it is. But we have nothing in the record. Fine and Taylor, there's nothing in the record that they have presented there which you can determine what type of property was taken, whether or not it was personal property or it was goods and services or service contracts, and to that effect. So, once again, we would ask the Court to adopt Corona-Sanchez in its entirety. But at the very least, we believe that this, the 44 condition. How do you steal and take away personal services? Well. Steal and take away. You take it away by, like I indicated in my moving papers, there are extended warranties, there are contracts for services in Wal-Mart, which one could basically come in and say that you have this particular receipt for this particular item. I need to be resurfaced. That's how you would take it. It's value. Well, let me be clear. Are you, you are, you said we could look at these documents. You're not opposing the judicial notice request. Given the Court's earlier ruling, I would oppose it at this time. But I did make it. That's just my view. It's not the view necessarily of the panel. I think we need to look at it the way the district court looked at it. Well, my problem with not remanding it to the district court is that the district court, since I know there are thousands and thousands of these cases in that district court, that we would not want the district court to think that this was an appropriate way to determine, you know, to determine the nature of the crime by just looking at the PSR. I mean, we've said that before, but obviously that's what the court did here, unless opposing counsel is correct that you conceded the nature of the crime. Your Honor, you just, in those situations, you have pressures that involve the actual negotiation of the case and fast track, all kinds of things that go into a play. And it just, you know, we're asking this to go up on plain error, and that's why we're here.
judges: Korman, Noonan, Wardlaw